**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

TRAVIS WOODS, an individual,

                               Plaintiff,                6:22-cv-525 (BKS/ATB)

v.

KASZTL WALSH, LLC and
PF MICHAEL WALSH, LLC,

                               Defendants.
_____

**Appearance:**

*For Plaintiff:*
Andrew D. Bizer
Bizer & DeReus, L.L.C.
3319 St. Claude Avenue
New Orleans, LA 70117

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Plaintiff Travis Woods brought this action against Defendants Kasztl Walsh, LLC and PF Michael Walsh, LLC, asserting claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York State Civil Rights Law ("NYSCRL"), N.Y. Civ. Rights Law § 40 et seq. (Dkt. Nos. 1, 20–21). Plaintiff filed a Complaint on May 18, 2022, (Dkt. No. 1), an Amended Complaint on May 12, 2023, (Dkt. No. 20), and a Second Amended

Complaint[1] on May 15, 2023, (Dkt. No. 21). Defendants have not answered the Complaint, Amended Complaint, or Second Amended Complaint, nor have they otherwise appeared in this action. (*See* Dkt. Nos. 4–5, 8, 16, 18, 23, 25). Presently before the Court is Plaintiff's motion under Federal Rule of Civil Procedure 55(b) for a default judgment against Defendants. (Dkt. No. 27). Plaintiff seeks declaratory and injunctive relief, compensatory damages, statutory damages, attorneys' fees, and costs.[2] (*Id.*). For the reasons that follow, the Second Amended Complaint is dismissed for lack of standing with respect to the Rental Office, and Plaintiff's motion is denied with respect to the Apartments.

## II.   FACTS[3]

Plaintiff has paraplegia stemming from a spinal cord injury and is unable to walk, stand, or use his legs without assistance. (Dkt. No. 21, ¶¶ 5–6). Accordingly, Plaintiff "require[s] a wheelchair for mobility." (Dkt. No. 27-3, ¶ 3). Defendants are "the owners and/or lessors" of the property located at 1216 Gray Avenue in Utica, New York ("the Property"). (Dkt. No. 21, ¶¶ 10–11). The Property includes two buildings which Plaintiff refers to as the "Michael Walsh Apartments," which themselves include apartments ("Apartments") and a rental office ("Rental Office"). (*Id.*, ¶¶ 11, 20; Dkt. No. 27-3, ¶ 10). Plaintiff "frequently travels past the Property" because it is "located about five [] miles away from [his] home," and "the Michael Walsh Apartments are distinctive for [Plaintiff] because several [of his] friends and family members,"

---

[1] Plaintiff served the Second Amended Complaint, but not the Amended Complaint, on authorized agents for Defendants. (Dkt. No. 23). Accordingly, the Second Amended Complaint is operative with respect to the motion presently before the Court.

[2] Title III of the ADA "authorizes private actions only for injunctive relief, not monetary damages." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004)). Plaintiff seeks compensatory and statutory damages pursuant to the state law claims. (Dkt. No. 21, at 10–11).

[3] The facts are taken from the complaint and, in light of the Court's sua sponte consideration of whether it has subject matter jurisdiction, materials that have been submitted outside the complaint, including the affidavits and documentary evidence. *See U.S. Bank Tr., N.A. v. Gebman*, No. 16-cv-7033, 2018 WL 3745672, at *2, 2018 U.S. Dist. LEXIS 132828, at *3–4 (S.D.N.Y. Aug. 7, 2018).

including his "brother and cousins," "reside there." (Dkt. No. 21, ¶¶ 16–19; Dkt. No. 27-3, ¶ 7). Plaintiff "has visited the Michael Walsh Apartments around three to five times per month in the recent past and does not see any reason why he would stop visiting the Michael Walsh Apartments with this frequency." (Dkt. No. 21, ¶ 29).

Plaintiff has desired and presently desires to "enter the Michael Walsh Apartments at the Property to visit friends and family or access the rental office." (*Id.* ¶¶ 20–21). However, Plaintiff has observed "mobility-related barriers at the Property." (*Id.* ¶ 24). Because of these barriers, Plaintiff "is aware that if he were to try to enter Michael Walsh Apartments at the Property, he would experience serious difficulty accessing the goods and utilizing the services." (*Id.* ¶ 25). Accordingly, Plaintiff is currently "deterred from entering the Property" and, as a result, excluded from "the programs, services, and activities offered" there. (*Id.* ¶¶ 26, 30–31). "[Plaintiff's] friends and family have asked him to come visit their apartments several times, but [Plaintiff] has been unable to even exit his car." (*Id.* ¶ 22). "His friends and family [have been] forced to talk to him in the parking lot through his car window." (*Id.*). "Most recently, about one month [prior to filing the Second Amended Complaint], [Plaintiff] went to the Michael Walsh Apartments to visit his brother and he again could not exit his car due to the mobility-related barriers. His brother had to come up to [Plaintiff's] car and speak to him through the car window." (*Id.* ¶ 23). Nevertheless, Plaintiff "intends to and will enter the Michael Walsh Apartments at the Property" in the future "as a patron and also as an ADA tester." (*Id.* ¶¶ 27–28, 32, 36).

Plaintiff, upon information and belief, alleges "that the following barriers are . . . the responsibility of Defendants": (1) "[t]he signs identifying the accessible-designated parking spaces are too low;" (2) "[t]here is no van-accessible parking space;" (3) "[t]here are no access

aisles adjacent to the accessible-designated parking spaces;" (4) "[t]here are no curb cuts adjacent to the accessible-designated parking spaces;" (5) "[t]here is no accessible route from the accessible-designated parking spaces to the Property's entrance;" (6) "[t]he ramps to access the entrance to the Property are too narrow and have cracked and broken concrete;" (7) "[t]he entrance to the Property has a broken threshold[];" (8) "[t]here is no accessible route between the apartment buildings that comprise the [Property];" and (9) "[o]ther mobility-related ADA barriers at the Property, both interior and exterior to be identified following a complete inspection of the Property." (*Id.* ¶ 34). Upon Plaintiff's information and belief, "removal of [these] discriminatory barriers to access . . . is readily achievable, reasonably feasible, could be easily accomplished, and would not place an undue burden on Defendants." (*Id.* ¶ 38).

On June 11, 2023, Plaintiff "returned to the Property to document the ADA barriers." (Dkt. No. 27-3, ¶¶ 8–9). He identified that the "parking lot ha[d] received fresh asphalt" but that the same mobility-related barriers existed. (*Id.* ¶ 9).

### III. DISCUSSION

#### A. Standing

The Supreme Court has "noted the existence of an 'inflexible' rule that 'without exception' requires federal courts, on their own motion, to determine if jurisdiction is lacking." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (quoting *Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). "If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." *Id.* (citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976)). "A lack of subject matter jurisdiction cannot be waived, and may be raised by motion or *sua sponte* at any time." *U.S. Bank Tr., N.A. v. Monroe*, No. 15-cv-1480, 2017 WL 923326, at *2, 2017 U.S. Dist. LEXIS 32874, at *3 (N.D.N.Y. Mar. 8, 2017) (first citing

*Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107 (2d Cir. 1997); and then citing Fed. R. Civ. P. 12(h)(3)). When a plaintiff "lack[s] Article III standing, a court has no subject matter jurisdiction to hear [his] claim." *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

A plaintiff carries "the ultimate burden of proving the Court's jurisdiction by a preponderance of the evidence." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001) (citations omitted). Accordingly, "[w]hether raised by motion, *sua sponte* or otherwise," a court's analysis is not limited to facts contained within the complaint; it may in addition rely upon "materials outside the pleadings, such as affidavits, documents and testimony in determining its subject matter jurisdiction." *U.S. Bank Tr., N.A. v. Gebman*, No. 16-cv-7033, 2018 WL 3745672, at *2, 2018 U.S. Dist. LEXIS 132828, at *3–4 (S.D.N.Y. Aug. 7, 2018) (citations omitted).

Plaintiff alleges that Defendants violated Title III of the ADA and seeks "declaratory and injunctive relief." (Dkt. No. 21, ¶ 1). In its initial decision, (Dkt. No. 19), the Court *sua sponte* addressed Plaintiff's standing. Finding that Plaintiff failed to establish standing to seek injunctive relief under the ADA, the Court dismissed Plaintiff's Complaint, (Dkt. No. 1), without prejudice and denied as moot Plaintiff's motion for default judgment, (Dkt. No. 11). Plaintiff subsequently filed the Second Amended Complaint. The Court now revisits the issue of standing.

As discussed in the Court's initial decision, (Dkt. No. 19), Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies' in which a plaintiff has a 'personal stake.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997)). "[T]o establish standing, a plaintiff must

5

show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff pursuing injunctive relief must establish that he "is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted).

In the ADA context, the Second Circuit has held "that a plaintiff seeking injunctive relief has suffered an injury in fact when: '(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (alteration in original) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013)). "These considerations may assist courts in determining whether an alleged prospective injury is sufficiently 'concrete and particularized.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). In particular, focus on the plaintiff's "intent to return based on past visits and proximity" "ensure[s] that 'the risk of harm is sufficiently imminent and substantial' to establish standing." *Id.* (quoting *TransUnion*, 141 S. Ct. at 2210). "[T]he central inquiry is not whether a complaint pleads the magic words that a plaintiff intends to return, but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff sufficiently alleges past injury by identifying "mobility-related barriers at the Property" and the difficulty such barriers would cause in Plaintiff accessing the Property.

(Dkt. No. 21, ¶¶ 24–25). For example, "[t]he signs identifying the accessible-designated parking spaces are too low" and "[t]here is no van-accessible parking space." (*Id.* ¶ 34). In *Kreisler*, the Second Circuit likewise found that the plaintiff, who was in a wheelchair, sufficiently alleged an injury under the ADA when he determined that he was unable to access the defendant's diner due to a step at the front entrance. *Kreisler*, 731 F.3d at 186. Further, as in *Kreisler*, Plaintiff alleges that because of mobility-related barriers he is "deterred from entering" the Property. *Id.* at 186, 188; (Dkt. No. 21, ¶ 26). The Second Circuit has held that "deterrence constitutes an injury under the ADA." *Kreisler*, 731 F.3d at 188; *see generally John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (noting that the Second Circuit has "repeatedly described [the injury-in-fact] requirement as a low threshold") (internal quotation marks omitted). Therefore, Plaintiff has satisfied the first requirement of standing by alleging past injury under the ADA.

As to the second requirement of ADA standing, it is reasonable to infer that Plaintiff's discriminatory treatment would continue because Plaintiff has alleged ongoing mobility-related barriers. The Second Circuit in *Kreisler* reached a similar conclusion when the defendant's diner "ha[d] not indicated an intent to remedy th[e] barrier." *Kreisler*, 731 F.3d at 188. Here, Plaintiff claims that when, on June 11, 2023, he "returned to the Property to document the ADA barriers," he identified that the "parking lot ha[d] received fresh asphalt" but that the same mobility-related barriers existed. (Dkt. No. 27-3, ¶¶ 8–9).

Turning to the third requirement, "the Second Circuit's opinions in *Kreisler* and *Calcano* are helpful in distinguishing between plausible and implausible assertions of an intent to return to a particular location." *Gannon v. 31 Essex St. LLC*, No. 22-cv-1134, 2023 WL 199287, at *3, 2023 U.S. Dist. LEXIS 7873, at *6–7 (S.D.N.Y. Jan. 17, 2023). In *Kreisler*, the Second Circuit found that the plaintiff, who was in a wheelchair and unable to access the defendant's diner due

7

to a step at the front entrance, had pleaded "sufficient facts to show a plausible intention to return." *Kreisler*, 731 F.3d at 188. The plaintiff had testified that he "frequent[ed] [other] diners in his neighborhood," "live[d] within several blocks of the [d]iner," "passe[d] by [the diner] three to four times a week," and "would [have] like[d] to frequent the [d]iner if he were able to access it." *Id.* at 186, 188. By contrast, the plaintiffs in *Calcano* merely "parrot[ed] the court's language in *Kreisler*," alleging in conclusory fashion that they resided "in close proximity to" the defendants' businesses, had been a "customer at [the defendants' location] on prior occasions," and intended to "immediately purchase at least one store gift card from the [d]efendant as soon as the [d]efendant [sold] store gift cards that [were] accessible to the blind." *Calcano*, 36 F.4th at 75 (noting that "conclusory invocations of the factors we found relevant in *Kreisler* are insufficient to establish standing"). The Second Circuit found that the plaintiffs' "vague assertions that they ha[d] been customers at [the defendants'] businesses 'on prior occasions'" failed to "nudge their claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)). The Court noted that the plaintiffs failed to "provide *any* details about their past visits or the frequency of such visits," such as "which stores they visited," "what items they purchased," or "why they want[ed] to purchase braille gift cards—for their own use or as gifts—so urgently that they intend[ed] to do so" as soon as the defendants sold gift cards that were accessible to the blind. *Id.* at 76–77 (emphasis in original).

As in *Kreisler*, here Plaintiff alleges specific facts from which the Court can reasonably infer a plausible intent to return to the Apartments. Plaintiff claims to "frequently travel[] past the Property" because it is "located about five [] miles away from [his] home." (Dkt. No. 21, ¶¶ 16–17); *see Kreisler*, 731 F.3d at 186. Moreover, Plaintiff claims that "the Michael Walsh Apartments are distinctive for him because several [of his] friends and family members . . .

reside there" and "have asked him to come visit their apartments several times." (Dkt. No. 21, ¶¶ 18–19, 22); *see, e.g.*, *Chalas v. Barlean's Organic Oils, LLC*, No. 22-cv-4178, 2022 WL 17156838, at *2–3, 2022 U.S. Dist. LEXIS 211816, at *8–9 (S.D.N.Y. Nov. 22, 2022) (finding that the plaintiff had alleged sufficient facts to plausibly infer that she intended to return to the defendant's website when she identified a specific purpose—"to buy the [product] for her cousin after hearing that this product in particular could relieve her cousin's issue"—and facts showing why she wanted to buy from the defendant's website in particular, citing to quality products that had received awards and the defendant's commitment to "staying ahead of the innovation curve"); *Maddy v. Life Time, Inc.*, No. 22-cv-5007, 2023 WL 4364488, at *5, 2023 U.S. Dist. LEXIS 115503, at *3 (S.D.N.Y. July 5, 2023) (finding that the plaintiff had sufficiently pleaded an intent to return to the defendant's website when she claimed that she "collect[ed] body lotions and oils from various brands . . . and [that] the website offer[ed] a specific oil . . . that [she] want[ed] to add to her collection"); *Walters v. Fischer Skis U.S., LLC*, No. 21-cv-1115, 2022 WL 3226352, at *4, 2022 U.S. Dist. LEXIS 142148, at *11 (N.D.N.Y. Aug. 10, 2022) ("[I]t is reasonable to infer, based upon [the] [p]laintiff's history as a skier and his interest in the sport, that he will plan another ski trip and will return to the site to purchase new equipment"). Finally, Plaintiff claims that he "has visited the Michael Walsh Apartments around three to five times per month in the recent past and does not see any reason why he would stop visiting the Michael Walsh Apartments with this frequency," and that he "intends to and will enter the Michael Walsh Apartments at the Property" in the future "as a patron and also as an ADA tester." (Dkt. No. 21, ¶¶ 27–29, 32, 36); *see, e.g.*, *Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 765 (S.D.N.Y. 2020) (noting that "an ADA plaintiff has standing to sue for injunctive relief if 'it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of

9

defendants' [services] to plaintiff's home, that plaintiff intended to return to the subject location'" (quoting *Kreisler*, 731 F.3d at 187–88)); *Monge v. 405 Hotel LLC*, No. 19-cv-451, 2021 WL 982866, at *7, 2021 U.S. Dist. LEXIS 36039, at *16–17 (E.D.N.Y. Feb. 24, 2021) (noting that a "'plausible intention or desire does not require a specific date for plaintiff's return to the . . . [defendant's] website . . . . Plaintiff's statements that he would return to the website in the future to assess whether he could make a reservation' are sufficient to confer standing" (quoting *Gonzalez v. Bahar Corp.*, No 19-cv-575, 2019 U.S. Dist. LEXIS 58567, at *6 (E.D.N.Y. Apr. 3, 2019)), *report and recommendation adopted*, 2021 WL 980870, 2021 U.S. Dist. LEXIS 49745 (E.D.N.Y. Mar. 15, 2021).

However, since apartment buildings are not "place[s] of public accommodation" under Title III of the ADA, *see infra* § III.C.1, the Court considers the allegations regarding the Rental Office. Plaintiff alleges that he "desires to enter the Michael Walsh Apartments at the Property to visit friends and family or access the rental office." (Dkt. No. 21, ¶¶ 20–21). The term "Michael Walsh Apartments" conflates the Apartments and the Rental Office. And the allegations regarding the Rental Office are, like the allegations in *Calcano*, vague and conclusory. While Plaintiff alleges specific facts from which the Court can reasonably infer a plausible intent to return to the Apartments, he provides no specific allegations to support the inference that he has any particular intention to access the Rental Office at the same location. He has not suggested when or how often he might desire to access the Rental Office, or explained why he might desire to access the Rental Office at all. Instead, Plaintiff includes vague boilerplate claims that he "intends to and will enter the Michael Walsh Apartments at the Property to utilize the goods and services in the future," without describing any goods or services or indicating any intent to seek services offered at the Rental Office. (Dkt. No. 21, ¶ 27). Plaintiff does not allege that he is

10

interested in renting an apartment at the Apartments or even that he intends to move. "[S]ome day intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the actual or imminent injury that Article III requires." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022). Consequently, with respect to the Rental Office, Plaintiff has not provided facts from which the Court could reasonably infer a real and immediate threat of future injury. *See Calcano*, 36 F.4th at 76–78; *see also Hennessy ex rel. Hennessy v. Poetica Coffee Inc.*, No. 21-cv-5063, 2022 WL 4095557, at *4, 2022 U.S. Dist. LEXIS 161376, at *14 (E.D.N.Y. Sept. 7, 2022) (finding that an ADA plaintiff did not have standing where his "allegations regarding proximity and intent to return—that he lives in 'Kings County,' that he 'frequently travels to the area' where [the] [d]efendants' business is located, and that he 'intends to patronize' [the] business 'several times a year after it becomes fully accessible'"—were vague and failed to plausibly establish standing for injunctive relief under the ADA); *Gannon v. JBJ Holdings, LLC*, No. 22-cv-1674, 2022 WL 6698222, at *3, 2022 U.S. Dist. LEXIS 185922, at *7 (S.D.N.Y. Oct. 11, 2022) (finding that the ADA plaintiff did not establish standing where he failed to allege "what [was] distinctive about" the defendants' donut shop, "the frequency with which he ha[d] visited the [Property] in the past," or his reasons for "want[ing] to avail himself of [the defendants'] services so urgently that he intend[ed] to do so immediately upon the removal of the alleged barriers" (citing *Calcano*, 36 F.4th at 77)); *Loadholt v. Dungarees, Inc.*, No. 22-cv-4699, 2023 WL 2024792, at *3, 2023 U.S. Dist. LEXIS 26006, at *6 (S.D.N.Y. Feb. 15, 2023) (dismissing ADA claim for injunctive relief when the plaintiff did "no more to allege intent to return [to the defendant's website] than the boilerplate allegations described in *Calcano*").

Based on the foregoing, Plaintiff has pleaded facts sufficient to establish standing to seek injunctive relief under the ADA with respect to the Apartments, but not with respect to the Rental Office. The Court now turns to Plaintiff's motion for default judgment against Defendants with respect to the Apartments. (Dkt. No. 27).

**B.     Default Judgment Standard**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Local Rule 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded."). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestley*, 647 F.3d at 505; *see also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

Here, Plaintiff has complied with the procedural requirements for obtaining a default judgment. On June 8, 2023, Plaintiff requested a clerk's entry of default under Rule 55(a), and, as required by Local Rule 55.1, Plaintiff submitted an affidavit affirming that Defendants (1) are not infants, incompetents, or active duty members of the United States Armed Forces; (2) were

properly served; and (3) have defaulted in this action. (Dkt. No. 24, ¶¶ 1–4). Plaintiff properly served Defendants in accordance with Federal Rule of Civil Procedure 4(h)(1)(B) by serving the Second Amended Complaint on authorized agents for Defendants. (Dkt. No. 23). On June 9, 2023, Plaintiff received a clerk's entry of default against Defendants. (Dkt. No. 25). On July 6, 2023, Plaintiff moved for default judgment under Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2(b). (Dkt. No. 27). As the procedural requirements for entry of default judgment are met, the Court will address liability.

### C. Liability

By failing to answer the Second Amended Complaint or oppose this motion, Defendants are deemed to have admitted the well-pleaded factual allegations in the Complaint. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."). However, "a pleading's legal conclusions are not assumed to be true." *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 265 (E.D.N.Y. 2019) (citation omitted). Before entering default judgment, the Court must review the complaint to determine whether Plaintiff has stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004). The court "need not agree that the alleged facts constitute a valid cause of action." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

### 1. Title III of the ADA

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 674 (2001). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id.* at 675. Plaintiff brings his claim under Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on a Title III claim, Plaintiff must prove: "(1) that []he is disabled within the meaning of the ADA; (2) that defendant[] own[s], lease[s], or operate[s] a place of public accommodation; and (3) that defendant[] discriminated against h[im] by denying h[im] a full and equal opportunity to enjoy the services defendant[] provide[s]." *Rossman v. Dollar Gen. Corp.,* 368 F. Supp. 3d 422, 426 (N.D.N.Y. 2019) (quoting *Camarillo v. Carrols Corp.,* 518 F.3d 153, 156 (2d Cir. 2008)). While a plaintiff proceeding under Title III may seek injunctive and declaratory relief, "[m]onetary relief . . . is not available to private individuals under Title III of the ADA." *Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *see also* 42 U.S.C. §12188(a).

Based on the allegations in the Second Amended Complaint, Defendants are not liable under Title III of the ADA. Even if Plaintiff qualifies as an individual with a disability, he has not shown that the Apartments are a place of public accommodation under Title III of the ADA. To be sure, Plaintiff alleges that "[t]he Property is a place of public accommodation, specifically an apartment building," (Dkt. No. 21, ¶ 11), and claims in his Memorandum in Support of his Motion for Final Default Judgment that "[he] alleged that Defendants are operating a place of

public accommodation and this admission has been confirmed by Defendants' default." (Dkt. No. 27-1, at 8). However, as previously discussed, "[a] defaulting party admits only well-pleaded factual allegations; it does not admit conclusory allegations or legal conclusions." *E.A. Sween Co. v. A&M Deli Express Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019) (citing *Finkel*, 577 F.3d at 84); *see also J&J Sports Prods., Inc. v. Salinas*, No. 17-cv-6820, 2018 WL 8544511, at *4, 2018 U.S. Dist. LEXIS 180973, at *10 (E.D.N.Y. Oct. 17, 2018) ("[A] pleading that only 'parrot[s]' the case law's language in boilerplate fashion . . . accomplishes nothing for the purposes of establishing liability upon a defendant's default." (citations omitted)).

The ADA defines "public accommodation" to include most "inn[s], hotel[s], motel[s], or other place[s] of lodging." *See* 42 U.S.C. § 12181(7)(A). However, "the term 'public accommodation' 'does not include residential facilities or apartment buildings.'" *Burke v. Verizon Commc'ns, Inc.*, No. 18-cv-4496, 2023 WL 2535165, at *16, 2023 U.S. Dist. LEXIS 44776, at *28 (S.D.N.Y. Mar. 16, 2023) (quoting *Mazzocchi v. Windsor Owners Corp.*, No. 11-cv-7913, 2012 WL 3288240, at *7, 2012 U.S. Dist. LEXIS 112479, at *17 (S.D.N.Y. Aug. 6, 2012)); *see also Kitchen v. Phipps Houses Grp. of Cos.*, No. 08-cv-4296, 2009 WL 290470, at *2 n.3, 2009 U.S. Dist. LEXIS 12559, at *7 n.3 (S.D.N.Y. Feb. 5, 2009) (holding that Title III claims could not be maintained against residential facilities); *aff'd*, 380 F. App'x 99 (2d Cir. 2010); *Reid v. Zackenbaum*, No. 05-xc-1569, 2005 WL 1993394, at *4, 2005 U.S. Dist. LEXIS 17177, at *12 (E.D.N.Y. Aug. 17, 2005) (holding that a "residential facility, such as an apartment, is not a public accommodation under the ADA"). Accordingly, Plaintiff fails to allege a plausible claim for relief under the ADA. Plaintiff's motion for default judgment is therefore denied with respect to Plaintiff's ADA claim arising from the Apartments. *See Malibu Media, LLC v. Causa*, No. 19-cv-963, 2020 WL 5408994, at *3, 2020 U.S. Dist. LEXIS 164268, at *9

(N.D.N.Y. Sept. 9, 2020) (denying motion for default judgment when the plaintiff failed to allege a plausible cause of action); *Navana Logistics Ltd. v. TW Logistics, LLC*, No. 15-cv-856, 2016 WL 796855, at *14, 2016 U.S. Dist. LEXIS 21822, at *42 (S.D.N.Y. Feb. 23, 2016) ("Navana's motion for a default judgment is denied and its claims against JDE are also dismissed because . . . Navana fails to plausibly allege any claim for relief against JDE."); *CIT Bank, N.A. v. Metcalfe*, No. 15-cv-1829, 2017 WL 3841843, at *7, 2017 U.S. Dist. LEXIS 132670, at *16 (E.D.N.Y. Aug. 17, 2017) ("I conclude that CIT has not stated a viable claim against NYCECB, and respectfully recommend that the motion for default judgment be denied as to NYCECB and the claim against it be dismissed without prejudice."), *report and recommendation adopted*, 2017 WL 3841852, 2017 U.S. Dist. LEXIS 142471 (E.D.N.Y. Sept. 1, 2017).

### 2. State-Law Claims

Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state claims. A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Doing so is particularly appropriate where, as here, "all federal-law claims are eliminated before trial." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 727 (2d Cir. 2013) (quotations omitted).

### IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Second Amended Complaint, (Dkt. No. 21), is **DISMISSED without prejudice** for lack of standing with respect to the Rental Office; and it is further

**ORDERED** that Plaintiff's motion for default judgment, (Dkt. No. 27), is **DENIED** with respect to the Apartments; and it is further

**ORDERED** that Plaintiff may file an amended complaint **within thirty (30) days of this Order**; and if Plaintiff fails to file an amended complaint within thirty (30) days of this Order, judgment shall enter dismissing this action without prejudice without further order of the Court.

**IT IS SO ORDERED.**

Dated: October 3, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge